IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICARDO VALDEZ, | ) | No. CIV. S-08-01978 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CORRECTIONAL OFFICERS | ) | |
| WALKER, GUFFEE AND VORON, | ) | |
| et al., and CSP-SACRAMENTO | ) | |
| MEDICAL CLINICIANS | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S JUDICIAL NOTICE REQUEST

On September 11, 2009, Plaintiff Ricardo Valdez ("Plaintiff")

proceeding pro se and in forma pauperis filed an amended complaint pursuant to

42 U.S.C. § 1983.  On August 12, 2010, Defendants Walker, Guffee, and Voron

(collectively, "Defendants") filed a Motion to Dismiss.  (Doc. # 25.)  After

reviewing the supporting and opposing memoranda, the Court DENIES

Defendants' Motion to Dismiss.

BACKGROUND

This matter involves a series of alleged incidents in which requests for

medical attention made by Plaintiff Ricardo Valdez were "undermined as minimal,

ignored, and deliberately delayed" over the course of approximately one year's time.  (First Amended Complaint, "FAC," Doc. # 12 at 3.)  Plaintiff is an inmate at the Mule Creek State Prison ("Mule Creek") in Ione, California.  (<u>Id.</u> at 1.) Plaintiff's Amended Complaint centers on an April 17, 2006 event, when Plaintiff informed Defendant Walker sometime in the morning that he was experiencing severe chest pains and needed to see the medical clinicians.  (<u>Id.</u> at 4.)  According to Plaintiff, Walker indicated that he would call for help, but instead never returned.  (<u>Id.</u>)  At approximately 12:30 pm that day, Plaintiff notified two other officers not party to this case that he was experiencing numbness in his arm and hand.  (<u>Id.</u>)  Plaintiff was placed in handcuffs and escorted down the hall, where he collapsed.  (<u>Id.</u> at 4–5.)  Plaintiff was taken to the infirmary on a gurney, given pain medication, and released.  (<u>Id.</u> at 5.)

Plaintiff also alleges that sometime prior to the April 17, 2006 event, Plaintiff notified Defendants Guffee and Voron that he was experiencing chest pains.  (<u>Id.</u> at 3–4.)  According to Plaintiff, Guffee told Plaintiff to wait for the routine medical walkthrough, which would have been in approximately three hours, and Voron replied "You're not dead, so you can wait" when Plaintiff protested the three hour wait.  (<u>Id.</u> at 4.)  Plaintiff also alleges that Defendants continued to neglect his medical needs through February 2007.  (<u>Id.</u> at 5.)  In

particular, Plaintiff alleges that he suffered a massive heart attack that required surgery in February 2007.  (Id., Ex. A.)

On August 22, 2008, Plaintiff filed the original Complaint, alleging that a "Jane Doe" was deliberately indifferent to his serious medical needs when she transported him to receive medical attention using a gurney instead of vehicle transportation.  (Doc. # 1.)  In an Order filed on August 26, 2009, this Court dismissed the Complaint with leave to amend.  (Doc. # 11).  The Court determined that Plaintiff failed to raise a claim for deliberate indifference under the Eighth Amendment as to Jane Doe.  (Id. at 5–8.)  Plaintiff was granted 30 days within which to file an amended complaint.

On September 11, 2009, Plaintiff filed the First Amended Complaint ("FAC").  (FAC, Doc. # 12.)  The FAC alleges that Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights were violated and seeks compensation pursuant to 42 U.S.C. § 1983.  On October 5, 2009, this Court filed an Order and Order Dismissing in Part Plaintiff's FAC, whereby Plaintiff's Fifth and Fourteenth Amendment Claims were dismissed.  (Doc. # 13.)  Pursuant to the aforementioned Order, only Plaintiff's Eighth Amendment claim remains.

On August 12, 2010, Defendants filed a Motion to Dismiss Plaintiff's FAC as against Defendants Walker, Guffee, and Voron alleging that Plaintiff did

not exhaust his administrative remedies.  (Mot., Doc. # 25.)  On August 31, 2010,

Plaintiff filed an Opposition.  (Opp'n, Doc. # 26.)  On September 10, 2010,

Defendants filed a Reply.  (Reply, Doc. # 29.)  On February 3, 2011, Plaintiff filed

a Motion for the Court to Judicial Notice of Relevant Case Law of Administrative

Appeal ("Judicial Notice Request"), which the Court here DENIES.[1]  (Doc. # 33.)

<u>STANDARD OF REVIEW</u>

Exhaustion is an affirmative defense with respect to which a

defendant has the burden of proof; it should be raised in an "unenumerated" Rule

12(b) motion to dismiss rather than in a motion for summary judgment.  <u>Wyatt v.</u>

<u>Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding an unenumerated

motion to dismiss for failure to exhaust nonjudicial remedies under Rule 12(b), the

court may look beyond the pleadings and decide disputed issues of fact.  <u>Id.</u> at

1119-20.  If the district court concludes that the prisoner has not exhausted the

relevant prison administrative process, the proper remedy is dismissal of the claim.

<u>Id.</u> at 1120.

---

[1] The Court notes that Plaintiff's Judicial Notice Request simply asked the
Court to take into consideration additional case law and arguments made by
Plaintiff.  Given that Plaintiff was already given the opportunity to file an
Opposition, the Court does not consider the additional arguments posed by
Plaintiff in his Judicial Notice Request, and thereby denies it.

DISCUSSION

I.      PLRA Requirements

        The Prison Litigation Reform Act of 1995 ("PLRA") amended 42

U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison

conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although the

district court at one time had discretion to permit a case to proceed without

exhaustion, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory.

See Porter v. Nussle, 534 U.S. 516 (2002).  All available remedies must be

exhausted; those remedies "need not meet federal standards, nor must they be

'plain, speedy, and effective.'"  Id. (citation omitted).  Even when the prisoner

seeks relief not available in grievance proceedings, notably money damages,

exhaustion is still a prerequisite to bringing suit.  Id.; Booth v. Churner, 532 U.S.

731, 741 (2001).  Exhaustion is a prerequisite to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong.  Porter, 534 U.S. at 532; see also

McKinney v. Carey, 311 F.3d 1198, 1199-00 (9th Cir. 2002) (per curiam)

(requiring prisoners to exhaust prison grievance procedure before, not after, filing

5

suit in federal court).  Moreover, the United States Supreme Court has held that "proper exhaustion of administrative remedies is necessary" and the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective appeal."  Woodford v. Ngo, 548 U.S. 81, 84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."  Id. at 91.

II.    Exhaustion of Administrative Procedures

Plaintiff is in custody in the State of California, and thus must follow California rules for exhaustion of administrative procedures.  In California, prisoners exhaust their administrative remedies by proceeding through four levels of appeal: (1) informal resolution, (2) formal written appeal on a California Department of Corrections ("CDC") 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDC ("Director's level review").  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  Reaching a final decision from the final level of appeal, a Director's level review, satisfies the exhaustion requirement.  Id. at 1237–38.

In the instant Motion, Defendants contend that Plaintiff failed to properly exhaust his administrative remedies, and thus his FAC must be dismissed.

6

(Mot. at 3.)  Defendants submit that Plaintiff filed seven appeals between April 2006 and June 2007, and that two such appeals pertain to the claims raised in the FAC.  (Id. at 6.)  Defendants argue that the first such appeal, log no. SAC-B-C6-01728 ("Appeal 1") (Id., Ex. B), did not pertain to any problem or issue with Officer Walker and was silent regarding Officers Guffee and Voron.  (Id. at 7.)  Defendants contend that the second appeal, log no. SAC-A-07-00792 ("Appeal 2") (Id., Ex. C), is also silent as to Officers Guffee and Voron.  (Id. at 8.)  They further aver that Appeal 2 did not reach the final level of review, a Director's level review.  (Id.)  This allegation is based on the fact that at the Director's level review, Plaintiff's appeal was screened out and returned to Plaintiff because it was missing documentation, and there is no record that Plaintiff resubmitted his appeal with the necessary documentation.  (Id.)

Plaintiff argues in his Opposition that he need not raise every detail of his claim administratively, and that he factually stated a claim as to the constitutional deprivations and violations he suffered.  (Opp'n at 2–3.)  In their Reply, Defendants again reiterate that Appeal 1 is the only relevant appeal to have reached a Director's level review, and that it did not state any allegations of wrongdoing or negligent behavior attributable to Walker, Guffee, or Voron.  (Reply at 2–3.)

7

The Court must first determine whether the relevant appeals reached the highest level of administrative review.  There is no dispute that Appeal 1 went through all four necessary steps, culminating in a Director's level review.  <u>See</u> (Mot. at 7.)  As to Appeal 2, Defendants argue that Plaintiff failed to exhaust his administrative remedies because there is no record indicating that he resubmitted his Director's level review with the necessary documentation to complete that stage of appeal.  (<u>Id.</u> at 8.)

While failure to pursue an available administrative remedy is normally grounds for dismissal under the PLRA, Defendants have not carried their burden to demonstrate such a failure here.  Defendants do not deny that Plaintiff filed a Director's level review[2], but they allege that this appeal was rejected by the Inmate Appeals Branch ("IAB") because of missing documentation.  (<u>Id.</u>)  There is no evidence, however, that the IAB properly notified Plaintiff of its decision to screen out his appeal or that it fulfilled its regulatory obligation to provide Plaintiff with "clear instructions" about the requisite steps "to qualify the appeal for processing." <u>See</u> Cal.Code. Regs., Tit. 15 § 3084.3(d).  Defendants have entirely failed to

---

[2] Although Plaintiff submitted an untimely appeal to the Inmate Appeals Branch for Director level review on July 18, 2007, appeals coordinators have the discretion to accept untimely appeals, Cal.Code Regs., Title 15 § 3084.3(c), and in this case, chose to accept Plaintiff's untimely appeal.  <u>See</u> (Mot. at 8.)

explain which documents IAB required Plaintiff to attach to his Director's level

review, and thus the Court cannot determine whether IAB was justified in rejecting

Plaintiff's appeal.

In the absence of such crucial evidence, Defendants have failed to

carry their burden at this juncture to demonstrate that Plaintiff did not exhaust all

"available" administrative remedies.[3]  See Jones, 549 U.S. at 212; Brown v. Valoff,

422 F.3d 926, 936–37 (9th Cir. 2005.)  Accordingly, the Court is unable to

conclusively find that Appeal 2 did not reach the final level of appeal.

Defendants' second argument is that Plaintiff did not exhaust his

administrative remedies because his grievances did not pertain to any problem or

issue with respect to Defendant Walker, and are entirely silent with respect to

Defendants Guffee and Voron.  The Court is unpersuaded by this argument as well.

The Supreme Court held, in Jones v. Bock, that the level of detail necessary in a

grievance is defined by the prison's requirements and not the PLRA.  549 U.S.

199, 217 (2007).  Specifically, the Court rejected a "name-all-defendants" rule,

holding that "exhaustion is not per se inadequate simply because an individual later

---

[3]  However, the Court notes that Defendants' failure to show that Plaintiff
did not exhaust his administrative remedies here, does not automatically mean that
Plaintiff has exhausted his administrative remedies, because Plaintiff's appeal may
have been defective, and defective administrative remedies fail to satisfy the
requirement for exhaustion.  Ngo, 548 U.S. at 84.

sued was not named in the grievances."  Id. (citing Johnson v. Johnson, 385 F.3d

503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance

is to alert prison officials to a problem, not to provide personal notice to a

particular official that he may be sued; the grievance process is not a summons and

complaint that initiates adversarial litigation.")).  "Compliance with prison

grievance procedures, therefore, is all that is required by the PLRA to 'properly

exhaust.'  The level of detail necessary in a grievance to comply with the grievance

procedures will vary from system to system and claim to claim, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion."  Jones, 549 U.S. at 218.

Under California law, a prison inmate must follow the administrative

exhaustion procedures set forth in §§ 3084.1–3084.7 of Title 15 of the California

Code of Regulations.  Section 3084.1 allows inmates to "appeal any departmental

decision, action, condition, or policy which they can demonstrate as having an

adverse effect upon their welfare."  Cal.Code Regs. tit. 15, § 3084.1(a).  As

explained above, this requires a prisoner to proceed through four levels, from

informal resolution to the Director's level review.  An inmate submits his

grievance on a CDC 602 Form, which instructs the inmate to "describe problem."

Neither the grievance form nor the California Code of Regulations contain any

instructions requiring an inmate to identify the parties or individuals involved with the complained of activity, or instruct the inmate to provide any particular level of detail.  Although California does not require its prisoners to name involved individuals in a grievance, the Supreme Court still requires that a grievance contain sufficient information such that a prison can "address complaints about the program it administers before being subjected to suit . . . ."  Jones, 549 U.S. at 219. Specifically, the Court cites Johnson, noting that "the primary purpose of a grievance is to alert prison officials to a problem."  385 F.3d at 522.

Thus, in order to properly exhaust his claim, Plaintiff must have put prison officials on notice of the problem at issue.  Defendants argue that the actions complained of in Plaintiff's inmate grievances do not include the same individuals as those alleged in his complaint.  However, both of Plaintiff's relevant grievances, Appeal 1 and Appeal 2, raise the issue of lack of medical attention.  On a motion to dismiss, the Court must construe the pleadings in pro se prisoner cases liberally and in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  See Estelle v. Gamble, 429 U.S. 97 106 (1976).  In doing so, this Court cannot find that the issues complained of in Plaintiff's prison grievance are not related to that complained of in his FAC.  Given that the requirement to exhaust administrative remedies is to afford the prison an opportunity to address

11

the inmate complaint internally, then in this case Plaintiff has done so.  In his

prison grievances, Plaintiff clearly complains about the pattern of alleged

indifference to his medical conditions leading up to and resulting from the April

17, 2006 incident.  Regardless of the exact details of the events constituting

Plaintiff's grievances, the prison was put on notice that such indifference could

have been occurring with respect to Plaintiff's medical problems.

        Moreover, Plaintiff was not required to name every Mule Creek staff

member that may have overlooked his medical concerns or played a role in the

incidents that form the basis for his litigation.  As stated above, in <u>Jones v. Bock</u>,

the Supreme Court held that "[t]he PLRA requires exhaustion of 'such

administrative remedies as are available,' 42 U.S.C. § 1997e(a), but nothing in the

statute imposes a 'name all defendants' requirement . . ."  549 U.S. at 217.  As the

CDC 602 form required Plaintiff only to "describe problem," he need not name a

particular individual during the grievance process in order to name that person as a

defendant and meet the PLRA's exhaustion requirement by the time he files suit.

<u>See</u> <u>Jones v. Bock</u>, 549 U.S. at 218–19.   The fact that Plaintiff did not identify

Guffee or Voron by name in his inmate grievances is immaterial to the exhaustion

question because he was not required by the form or policy to name each of the

wrongdoers.  Proper exhaustion requires only a minimum level of information, not

the optimal level of information necessary to prepare the prison for potential litigation.  Therefore, Defendants' argument is not sufficient to support a motion to dismiss.

Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's Eighth Amendment claim in the FAC.

CONCLUSION

For the reasons stated above, this Court DENIES Defendants' Motion to Dismiss, and DENIES Plaintiff's Judicial Notice Request

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 29, 2011.

_____
David Alan Ezra
United States District Judge

Valdez v. Walker et al., No. CIV. S-08-01978 DAE;  ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S JUDICIAL NOTICE REQUEST

13