IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICARDO VALDEZ, | ) | Case No. 2:08-cv-1978 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CORRECTIONAL OFFICERS | ) | |
| WALKER, GUFFEE, and VORON, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY  JUDGMENT

Before the Court is Defendants Walker, Guffee, and Voron's

(collectively, "Defendants") Motion for Summary Judgment.  (Doc. # 46.)

Pursuant to Local Rule 230(l), the Motion was submitted without oral argument.

After reviewing the supporting and opposing memoranda, the Court **GRANTS**

Defendants' Motion.

BACKGROUND

This matter involves a series of alleged incidents in which requests for

medical attention made by Plaintiff Ricardo Valdez ("Plaintiff") were ignored over

the course of approximately one year's time.  ("FAC," Doc. # 12 at 3.)  Plaintiff is

currently an inmate at the Mule Creek State Prison ("Mule Creek") in Ione,

California.  (Id. at 1; Valdez Depo. at 63.)  He was housed in an administrative

segregation unit at California State Prison, Sacramento ("CSP-Sacramento")

during the alleged incidents that form the basis of this action.  (FAC at 2.)

Defendants Walker, Voron, and Guffee were Correctional Officers at CSP-

Sacramento during this time.  ("Walker Decl.," Doc. # 46-4 ¶ 1; "Guffee Decl.,"

Doc. # 46-5 ¶ 2; "Voron Decl.," Doc. # 46-6 ¶ 1.)

> Plaintiff Valdez has a long history of heart problems and suffered a

heart attack at approximately age 38, which caused major heart damages. (Valdez

Depo. at 15:5–16:18.)  As a result of his heart problems, Valdez was prescribed

numerous medications for his heart, blood, and veins.  (Id. at 17:13–18:20.)

Valdez' health record reflects a history of poor compliance with his blood pressure

medication, which raises the risk of heart complications, as well as a history of

diverting pain medications for personal gain.  ("Heatley Decl.," Doc. # 46-3 ¶¶

17–18.)

> According to Plaintiff's First Amended Complaint ("FAC"), on the

morning of April 17, 2006, Plaintiff informed Defendant Walker that he was

experiencing severe chest pains and needed to see medical clinicians.  (Id. at 4.)

Plaintiff alleges that Walker indicated that he would call for help, but that he never

returned.  (Id.)  At about 12:30 p.m. that day, Plaintiff allegedly notified two other

officers not party to this case that he was experiencing numbness in his arm and hand.  (Id.)  Plaintiff was eventually placed in handcuffs and escorted down the hall, where he collapsed.  (Id. at 4–5.)  Plaintiff was taken to the infirmary on a gurney, given pain medication, and released.  (Id. at 5.)

   Plaintiff also alleges that sometime prior to the April 17, 2006 event, Plaintiff notified Defendants Guffee and Voron that he was experiencing severe chest pains and needed medical attention.  (Id. at 3–4.)  According to Plaintiff, Guffee told Plaintiff to wait for the routine medical walkthrough, which would have been in approximately three hours, and when Plaintiff protested the three-hour wait, Voron replied, "You're not dead, so you can wait."  (Id. at 4.)  Plaintiff also alleges that Defendants neglected his medical needs from April 11, 2006 through February 15, 2007.  (Id. at 5.)  According to the FAC, Defendants' neglect resulted in Plaintiff suffering a massive heart attack that required surgery in February 2007.  (Id., Ex. A.)

   On August 22, 2008, Plaintiff filed the original Complaint, alleging that a "Jane Doe" was deliberately indifferent to his serious medical needs when she transported him to receive medical attention using a gurney instead of vehicle transportation.  (Doc. # 1.)  In an Order filed on August 26, 2009, the Court found that Plaintiff failed to state a claim for deliberate indifference under the Eighth

Amendment as to Jane Doe and dismissed the Complaint with leave to amend.

(Doc. # 11.)  Plaintiff was granted 30 days within which to file an amended

complaint.

On September 11, 2009, Plaintiff filed the present FAC.  (FAC, Doc.

# 12.)  The FAC alleges that Plaintiff's Fifth, Eighth, and Fourteenth Amendment

rights were violated and seeks compensation pursuant to 42 U.S.C. § 1983.  On

October 5, 2009, the Court filed an Order dismissing Plaintiff's Fifth and

Fourteenth Amendment claims.   (Doc. # 13.)  Plaintiff's Eighth Amendment claim

remains.  (Id.)

On August 12, 2010, Defendants filed a Motion to Dismiss,

contending that Plaintiff failed to properly exhaust his administrative remedies.

(Doc. # 25.)  On March 30, 2011, the Court denied Defendants' Motion to Dismiss

with respect to Plaintiff's Eighth Amendment claim in the FAC.  (Doc. # 35.)  In

reaching that conclusion, the Court noted that Plaintiff's prison grievance "clearly

complain[ed] about the pattern of alleged indifference to his medical conditions

leading up to and resulting from the April 17, 2006 incident."  (Id. at 12.)

On October 26, 2011, Defendants filed the instant Motion for

Summary Judgment ("Motion").  (Doc. # 46.)  On February 7, 2012, Plaintiff filed

an Opposition to Defendants' Motion for Summary Judgment.[1]  (Doc. # 53.)  On

February 24, 2012, Defendants filed a Reply.  (Doc. # 56.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56 requires summary

judgment to be granted when "the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005);

Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose

of summary judgment is to dispose of factually unsupported claims and defenses.

Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial—usually,

---

[1]  The Court notes that Plaintiff's 7-page Memorandum in Opposition largely
reiterates the allegations and prayer for relief in his FAC.  Further, Plaintiff's
Opposition fails to comply with Local Rule 260(b), which requires that any party
opposing a motion for summary judgment or summary adjudication "reproduce the
itemized facts in the Statement of Undisputed Facts and admit those facts that are
undisputed and deny those that are disputed, including with each denial a citation
to the particular portions of any pleading, affidavit, deposition, interrogatory
answer, admission, or other document relied upon in support of that denial."  E.D.
Cal. R. 260(b).

but not always, the defendant—has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

        Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003).  "[A]t least some 'significant probative evidence' " must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.  The Ninth Circuit has "refused

to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003). Furthermore, a pro se litigant is held to the same standard in responding to a motion for summary judgment as a represented party. Jacobsen v. Filler, 790 F.2d 1362, 1364-66 (9th Cir. 1986); United States v. Bell, 27 F. Supp. 2d 1191, 1197 n. 4 (E.D. Cal. 1998).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences

7

may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required to resolve in favor of the nonmoving party. T.W. Elec.

Serv., 809 F.2d at 631.

## DISCUSSION

A.   Deliberate Indifference Claim

"[T]o maintain an Eighth Amendment claim based on prison medical

treatment, an inmate must show 'deliberate indifference to serious medical needs.'"

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble,

429 U.S. 97, 106 (1976)).  The two-part test for deliberate indifference requires the

plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to

treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to

the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin

v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992)).

Deliberate indifference is shown by: (1) "a purposeful act or failure to

respond to a prisoner's pain or possible medical need," and (2) "harm caused by

the indifference." Id. (citing McGuckin, 974 F.2d at 1060); see Farmer v. Brennan,

511 U.S. 825, 837–42 (1994).  Deliberate indifference may be manifested "when

prison officials deny, delay or intentionally interfere with medical treatment, or it

8

may be shown by the way in which prison physicians provide medical care." Id.

(citing McGuckin, 974 F.2d at 1060).  A delay in medical treatment, without more,

is insufficient to state a claim of deliberate medical indifference.  Shapely v.

Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  The

delay in medical treatment must be harmful, although there is no requirement that

the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1059–60.  A finding

that an inmate was seriously harmed by the defendant's action or inaction tends to

provide additional support for a claim of deliberate indifference; however, it does

not end the inquiry.  Id. at 1060.  Generally, "the more serious the medical needs of

the prisoner, and the more unwarranted the defendant's action in light of those

needs, the more likely it is that a plaintiff has established deliberate indifference on

the part of the defendant."  Id. at 1061.

Here, Plaintiff claims that while detained, he made numerous requests

for medical attention for his chest pains and that Defendants displayed deliberate

indifference to this serious medical condition.  (FAC at 5.)  He alleges that

Defendants ignored his complaints and delayed in getting him appropriate medical

care leading up to an alleged incident on April 17, 2006.  (Id. at 3–5.)  Plaintiff

further alleges more generally that between April 11, 2006 and February 15, 2007,

he requested medical attention and Defendants neglected him and failed to take his

medical concerns seriously.[2] (Id. at 5.)  According to Plaintiff, Defendants' neglect resulted in Plaintiff suffering a massive heart attack that required surgery in February 2007.  (Id., Ex. A.)

      According to Plaintiff's deposition testimony,[3] on the morning of April 17, 2006, Plaintiff informed Defendant Walker that he was experiencing severe chest pains and needed to see a nurse.  (Valdez Depo at 43:3–25.)  Walker indicated that he would call for help but he never returned.  (Id. at 44:1–9; 46:14–17.)  Plaintiff testified that approximately five minutes after his exchange with Walker, he saw Defendant Guffee opening cell doors to permit inmates to return from the outside yard.  (Id. at 46:17–23.)  Plaintiff claims he told Guffee that

---

    [2]In his FAC, Plaintiff does not provide any factual allegations identifying when and to whom these alleged requests were made or how any defendants neglected his concerns.  Plaintiff's unsupported and conclusory assertion regarding Defendants' allegedly neglectful behavior during this 10-month time span is not sufficient to state a plausible ground for relief.  Moreover, Defendants submitted evidence showing that Valdez was seen by medical officials on multiple occasions between August 2006 and February 14, 2007.  (See Heatley Decl. ¶¶ 13–15.)  Valdez's Exhibit C in his Opposition also shows that he was seen by medical staff on at least sixteen separate occasions for complaints of chest pain.  (Opp'n, Ex. C.)

    [3]At Plaintiff's request, a Spanish-speaking interpreter was provided for Valdez's deposition because he does not speak or write English well.  Valdez admitted at his deposition that he did not personally write or type out his pleadings in his case, and instead relied on inmates to translate his verbal Spanish into written English.  (Valdez Depo. at 5:1–9; 33:6–35:15.)

he had pain in his heart and Guffee screamed, "Hey, there's a man down here."
(Id. at 50:24–51:11.)  Sergeant Voron immediately arrived and asked Valdez what
was going on.  (Id. at 48:16–24.)  Valdez claims that at this point he was lying on
the ground in his cell.  (Id. at 49:18–50:1.)  According to Plaintiff, Voron placed
Valdez in handcuffs and escorted him down the hall, where he collapsed.  (Id. at
50:2–6; FAC at 4–5.)  Plaintiff was taken to the infirmary on a gurney, given pain
medication, and released to his cell that same day.  (Valdez Depo at 50:2–54:1;
Heatley Decl. ¶ 20.)

       As to the alleged incident on April 17, 2006, the record before the
Court does not show any triable issue as to whether Defendants acted with
deliberate indifference to Plaintiff's medical needs.  Plaintiff's own deposition
testimony demonstrates that both Guffee and Voron acted promptly in response to
Plaintiff's complaints of chest pain.  With respect to Guffee, Plaintiff admits that
she responded to his complaint by yelling out to the sergeant for assistance.  (Id. at
51:11.)  Similarly, with respect to Voron, Plaintiff's testimony confirms that he
immediately escorted Plaintiff out of his cell and to the infirmary for medical care.
(Id. at 48:16–50:4.)  Additionally, in their respective declarations in support of the
instant Motion, each of the three Defendants state that they did not deny, delay, or
interfere with Plaintiff's medical care.  (Guffee Decl. ¶ 16; Voron Decl. ¶ 14;

Walker Decl. ¶ 15.)  Meanwhile, Plaintiff has not proffered any evidence, opinion,

or otherwise to demonstrate that Defendants acted with deliberate indifference.

       Moreover, Defendants have submitted evidence establishing that any

deliberate indifference on the part of Defendants leading up to and including the

April 17, 2006 incident did not cause Plaintiff any harm.  First, insofar as Plaintiff

is alleging harm stemming from the medical treatment he received, none of the

Defendants would be liable for such treatment because, as custody staff members,

Walker, Guffee, and Voron did not have the authority to diagnose an inmate's

medical issues, dictate how quickly medical staff provides treatment, perform

medical procedures, or dispense medication.  (Walker Decl. at ¶ 11; Guffee Decl.

at ¶ 12; Voron Decl. at ¶ 10.)  Further, according to Dr. S. Heatley ("Dr. Heatley"),

a licensed medical doctor employed at Mule Creek State Prison, Valdez suffered

no damage from any alleged delay in medical care on April 17, 2006, and Valdez

received "timely and appropriate medical care" at CSP-Sacramento in 2006.

(Heatley Decl. ¶¶ 1, 36–37.)  Additionally, Dr. Heatley stated that Valdez's UHR

confirms that while housed at CSP-Sacramento, Valdez underwent numerous

electrocardiograms ("EKG"), a test that checks for problems with the electrical

activity of the heart and can often indicate active or past damage to the heart.  (Id.

¶ 21.)  Dr. Heatley observed that an August 2006 EKG showed results similar to

12

other EKGs Valdez had previously undergone and showed prior damage from his

1999 heart attack[4]; no new damage was seen.  (Id. ¶ 22.)

Plaintiff has not come forward with any evidence raising a triable

issue as to whether any delay by the Defendants caused him any harm or injury.

The only evidence cited by Valdez in his Opposition consists of three exhibits of

medical records demonstrating that was treated for heart problems and/or chest

pains in 2006 and 2007.  (Opp'n, Exs. A–C.)  However, the mere fact that Plaintiff

was treated for these medical problems does not demonstrate that such problems

resulted from any delay in treatment caused by the Defendants.  There is no

medical evidence in the record to suggest that Defendants' alleged conduct caused

Plaintiff any injury.  See Cooper v. McAlpine, 2010 WL 760703, at *7 (E.D. Cal.

March 4, 2010)  (citing Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th

Cir. 2008)) (in addition to demonstrating deliberate indifference, in a § 1983

action, the plaintiff must also demonstrate that the defendant's conduct was the

actionable cause of the claimed injury); see also Hill v. Dekalb Regional Youth

Detention Center, 40 F.3d 1176, 1188–1189 (11th Cir. 1994) (holding "[a]n inmate

who complains that delay in medical treatment rose to a constitutional violation

---

[4]While Dr. Heatley's declaration references a 1999 heart attack, Valdez testified that the heart attack was in 1998.  (Valdez Depo at 15:2–6.)

must place verifying medical evidence in the record to establish the detrimental

effect of delay in medical treatment to succeed"); cf. Iolab Corp. v. Seaboard Sur.

Co., 15 F.3d 1500, 1506, n.4 (9th Cir. 1994) ("Although causation is a question of

fact, it may be decided as a matter of law if, under undisputed facts, reasonable

minds could not differ.").

        Additionally, the Court notes that Plaintiff testified at his deposition

that Defendant Walker ignored his request for medical attention on February 14,

2007.  (Valdez Depo at 55:24–57:8.)  Plaintiff's FAC makes no reference to this

purported incident.  Plaintiff cannot expand the scope of his pleadings through his

deposition testimony.  See Szemple v. Correctional Medical Services, Inc., Civ.

No. 07-4809, 2012 WL 161798 at *5 n.8 (D.N.J. Jan. 19, 2012) (noting that a

claim cannot be recognized when the allegation is not set forth in the amended

complaint or alleged as of the time of plaintiff's deposition).  Nonetheless, even if

Plaintiff had properly pled facts regarding the February 14, 2007 incident, the

Court would find that the record does not show any triable issue as to whether

Defendant Walker acted with deliberate indifference to Plaintiff's medical needs.

        Defendants submitted evidence showing that any alleged acts by

Defendant Walker in February 2007 did not cause Plaintiff any harm.  According

to Dr. Heatley, Valdez suffered no damage from any alleged delay in medical care

on February 14, 2007, and Valdez received "timely and appropriate medical care" at CSP-Sacramento in 2007.  (Heatley Decl. ¶¶ 36–37.)  Moreover, Dr. Heatley stated that tests administered on Valdez upon his arrival at the hospital on February 14, 2007 showed no evidence of a heart attack or permanent heart muscle damage, although there were "warning symptoms."  (Heatley Decl. ¶¶ 27–28.)  Dr. Heatley also observed that on February 16, 2007, Valdez underwent a "Nuclear Cardiac Spec Study," an exercise stress test with nuclear imaging of the heart, which showed no change from 2006.  (Id. ¶ 30.)  Dr. Heatley further stated that a February 17, 2007 heart catheterization test, which is performed only after less invasive testing is done, revealed "significant blockages to the left main and 3 other blood vessels to the heart," showing a high risk pattern for a future heart attack.  (Id. ¶ 31.)  According to Dr. Heatley, Valdez underwent triple artery bypass surgery on February 19, 2007 as a precautionary measure because it was "medically probable" that a patient with a history of heart ailments like Valdez would eventually suffer a major heart attack. (Id. ¶¶ 32, 35.)

As with respect to the alleged April 2006 incident, Plaintiff has not proffered any evidence raising a triable issue as to whether any delay by Defendant Walker on February 14, 2007 caused him harm or injury.  Accordingly, the Court concludes that Defendants are entitled to Summary Judgment as to Plaintiff's

Eighth Amendment claim.

B.     Qualified Immunity

Defendants also argue, in the alternative, that the doctrine of qualified

immunity shields them from liability as to Plaintiff's deliberate indifference claim.

The defense of qualified immunity protects "government

officials . . . from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A

defendant may have a reasonable, but mistaken, belief about the facts or about

what the law requires in any given situation.  Saucier v. Katz, 533 U.S. 194, 205

(2001).  The threshold question in qualified immunity analysis is: "Taken in the

light most favorable to the party asserting the injury, do the facts alleged show the

officer's conduct violated a constitutional right?"  Id. at 201.  A court considering a

claim of qualified immunity must determine whether the plaintiff has alleged the

deprivation of an actual constitutional right and whether such right was "clearly

established."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Where there is no

clearly established law that certain conduct constitutes a constitutional violation,

the defendant cannot be on notice that such conduct is unlawful.  Rodis v. City &

County of San Francisco, 558 F.3d 964, 970–71 (9th Cir. 2009).  The relevant,

16

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted.  <u>Saucier</u>, 533 U.S. at 202.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendants prevail as a matter of law on their qualified immunity defense because the Court has determined that there was no Eighth Amendment violation.  However, even if an Eighth Amendment violation had occurred, in light of clearly established principles at the time of the incident, Defendants could have reasonably believed that their behavior was lawful.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment.  The Clerk of the Court is directed to enter Judgment and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 9, 2012.



_____
David Alan Ezra
United States District Judge